George H. BENFORD

v.

**AMERICAN BROADCASTING COMPANIES, INC., and Mrs. Isaac (Betty) Hamburger and Miss Kathleen T. Gardner and Lillian M. Teitelbaum and David L. Holton and Margaret Osmer.**

**Civ. A. No. N–79–2386.**

United States District Court,
D. Maryland.

May 2, 1983.

Wilson K. Barnes, and Little, Hall & Steinmann, P.A., Baltimore, Md., and Dean E. Sharp and George Driesen, Washington, D.C., and Anthony K. Dilimetin, New York City, for plaintiff.

Stanley M. Brand, Steven R. Ross and Michael L. Murray, U.S. House of Representatives, Washington, D.C., for applicant Select Committee on Aging of the U.S. House of Representatives.

## MEMORANDUM

NORTHROP, Senior District Judge.

Counsel for the Select Committee on Aging of the United States House of Representatives (hereinafter "Select Committee"), who also represent defendants Hamburger, Gardner, Teitelbaum, and Holton (hereinafter "congressional defendants"), filed the subject motion on behalf of the Select Committee to intervene and for a protective order from a subpoena *duces tecum* served on the Clerk of the House, another of their clients. Although counsel come wearing a different hat, their goal seems to be the same: to prevent plaintiff Benford from discovering evidence that will verify his complaint.

Counsel's first attempt to stave off Benford's state and federal wiretapping and common law claims was made in 1980. Representing the congressional defendants, they argued that the Constitutions' Speech or Debate Clause and the common law doctrine of official (absolute) immunity protected all but defendants American Broadcasting Companies, Inc. and Osmer (hereinafter "ABC"). The arguments were without merit, however, and were rejected by this Court. The United States Court of Appeals for the Fourth Circuit affirmed. *See Benford v. American Broadcasting Companies, Inc.,* 502 F.Supp. 1148 (D.Md. 1980), *aff'd,* 661 F.2d 917 (4th Cir.) [table], *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981). This Court left open the possibility that a qualified immunity defense might be raised at trial. *Id.*

On June 24, 1982, the United States Supreme Court decided *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which had the net effect of permitting a party the option of raising a qualified immunity defense before discovery is completed. Counsel for the congressional defendants thereafter claimed qualified immunity, and the parties filed exhaustive memoranda on the issue. Ultimately, the plaintiff prevailed. *See Benford v. American Broadcasting Companies, Inc.,* 554 F.Supp. 145 (D.Md.1982). Without leave of Court, the congressional defend-

ants filed an interlocutory appeal requesting reversal of that decision by the Fourth Circuit. Motions for stays of discovery pending the appeal were also filed, and to a limited extent, were granted by another judge of this Court acting as chambers judge, apparently because the undersigned was trying cases in another district and was unavailable for a hearing. In the meantime, counsel battled in private over counsel for congressional defendants' unwillingness to have their clients appear for plaintiff's previously scheduled depositions.

On April 8, 1983, this Court lifted the stay. Again, counsel for the congressional defendants were ordered to move forward with discovery. At the time, they were in court to argue the subject motion on behalf of the Select Committee and to keep the stay alive. At the hearing, a trial date was scheduled for January, 1984. Several days later, on April 11, 1983, the Fourth Circuit dismissed the congressional defendants' "second pretrial appeal." *Benford v. American Broadcasting Companies, Inc.,* 707 F.2d 504, (4th Cir.1983) (UP).

The present dispute erupted prior to defendants' counsel's filing of the second interlocutory appeal, when plaintiff's counsel served a subpoena *duces tecum* upon the Clerk of the House requesting the production of certain documents. Again, the same counsel who represent the congressional defendants were in court. However, this time the Clerk of the House, Benjamin J. Guthrie, was their client. They moved to quash the subpoena on the ground it was improperly issued. As before, counsel were unsuccessful, and the motion to quash was denied. *Benford v. American Broadcasting Companies, Inc.,* 98 F.R.D. 40, Civil No. N–79–2386 (Jan. 28, 1983). Reluctantly, and only due to the persistent demands of counsel for the plaintiff, did congressional counsel agree on the record to comply with the plaintiff's subpoena within a time certain.

As stated above, the motion now before the Court is the Select Committee's motion to intervene for the limited purpose of winning a protective order from the subpoena

*duces tecum* served on the Clerk of the House, and which counsel previously agreed to honor. However, counsel now contend the subpoena requests documents which reflect the internal investigative activity of the Select Committee and which are privileged by the Speech or Debate Clause of the United States Constitution. That Clause provides that "[t]he Senators and Representatives ... for any Speech or Debate in either House ... shall not be questioned in any other place." *U.S. Const.* art. I, § 6. Counsel for the Select Committee have not, however, indicated with any particularity what documents they refer to,[1] and instead would have this Court blindly accept their conclusory and seemingly self-serving suggestion that *they* will screen what is and what is not protected. Boldly, they suggest the Clerk of the House would risk contempt of Court to vindicate the Select Committee's "privileges." This Court cannot help but point out the irony that counsel agreed to abide by this same subpoena when they appeared on behalf of the Clerk. As to the issue of what is and what is not privileged, this Court reminds counsel that it is "the duty of the judicial department to say what the law is." *United States v. Nixon,* 418 U.S. 683, 703, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974); *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60 (1803).

■ In *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), a Freedom of Information Act case, in order to assure that a party's right to information was "not submerged beneath governmental obfuscation and mischaracterization," *id.* at 826, means for presenting a verifiable "privilege" claim were developed. Primarily, these consisted of the subpoenaed parties' preparation of a detailed index reflecting the documents and portions of documents alleged to be beyond review. In the absence of a similar proffer to the Court in the case *sub judice,* the Select Committee's motion can hardly be entertained.[2]

■ Moreover, even assuming this Court was provided this information, the Select Committee's request for intervention to assert Speech or Debate Clause protections is entirely inappropriate. In *Benford v. American Broadcasting Companies, Inc.,* 502 F.Supp. 1148 (D.Md.1980), *aff'd,* 661 F.2d 917 (4th Cir.) [table], *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981), the Speech or Debate Clause was reviewed extensively as it applied to this

---

1. Plaintiff has demanded what can generally be characterized as five classes of documents: (a) documents referring to or constituting communications between the congressional defendants and ABC and other communications pertaining to the communications among all the defendants relating to the surveillance of the plaintiff; (b) documents substantiating the congressional defendants' contention that they were authorized to engage in the conduct at issue; (c) documents described in the affidavits of the Select Committee Chairman and defendant Holton submitted in support of the congressional defendants' motion for summary judgment on the ground of qualified immunity, and not "attached thereto" or otherwise provided to the Court as required by Fed.R.Civ.P. 56(e); (d) documents pertaining to the veracity of the affidavits referred to in (c) above; and (e) miscellaneous documents.

2. Congressional counsel's argument that plaintiff's subpoena itself is sufficiently particularized and that further indexing is not necessary is unacceptable. The great bulk of those documents were represented as being in existence by the congressional defendants themselves and were relied upon in their summary judgment motions. To date, this Court has never seen them. Because the issue of qualified immunity is very much alive, and may be reasserted by these defendants at trial, the authority they actually possessed is a highly relevant issue. Unless the congressional defendants are willing to drop their immunity claim altogether, at a minimum this Court should examine the relevant documents supporting the claim, *in camera,* to determine whether the congressional defendants have accurately characterized their content. *Id.* at 824–25. Of course, if the material requested is voluminous and burdensome, an accommodation similar to that in *Vaughn v. Rosen* will need to be reached between the appropriate parties. This applies not only to those documents requested in paragraph 15 of the attachment to plaintiff's subpoena, but also to all remaining materials plaintiff requested, and which congressional counsel claim are privileged. Under no circumstances will this Court accept congressional counsel's representations, without the kind of scrutiny sufficient to safeguard the plaintiff from this quirk in the adversary system.

case. Citing *McSurley v. McClellan,* 553 F.2d 1277, 1287 (D.C.Cir.1976) (en banc), and *Gravel v. United States,* 408 U.S. 606, 620, 92 S.Ct. 2614, 2624, 33 L.Ed.2d 583 (1972), this Court repeated the fundamental propositions that members of Congress and their aides are not free to use every conceivable means to obtain investigatory materials without fear of civil or criminal· suit, *McSurley v. McClellan,* 553 F.2d at 1287, and that in the event unlawful activity is apparent,[3] neither the members nor their aides are immune from liability or questioning. *Gravel,* 408 U.S. at 620, 92 S.Ct. at 2625. *Benford,* 502 F.Supp. at 1155. Important as well is the following observation of the United States Court of Appeals for the Third Circuit, which is quite correct:

Unlike privileges such as attorney-client,· physician-patient, or priest-penitent, the purpose of which is to prevent disclosures which would tend to inhibit the development of socially desirable confidential relationships, *see* Note, The *Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement,* 91 Harv.L. Rev. 464, 465–66 (1977), the Speech or Debate privilege is at its core a use privilege. *See United States v. Helstoski,* 576 F.2d 511, 523 (3d Cir.), *cert. granted,* 439 U.S. 1045, 99 S.Ct. 719, 58 L.Ed.2d 704, *In re Grand Jury Proceedings (Cianfrani), supra,* 563 F.2d [577] at 584 [ (3rd Cir. 1977) ]. The constitution clothes the legislator with a use immunity, analogous in many ways to the use immunity conferred upon witnesses. To be sure, the Speech or Debate Clause has also been construed to permit a legislator to refrain from *testifying* about certain legislative acts. . . .

But to the extent that the Speech or Debate Clause creates a *testimonial* privilege as well as a *use* immunity, it does so only for the purpose of protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning. It is not designed to encourage confidences by maintaining secrecy for the legislative process in a democracy has only a limited toleration for secrecy. *See U.S. Const.* art. 1, § 5, cl. 3. *As we have said on two other occasions, the privilege when applied to records or third-party testimony is one of nonevidentiary use, not of nondisclosure.* See United States v. Helstoski, supra; In re Grand Jury Proceedings (Cianfrani), supra.

*In re Grand Jury Investigation, Etc.,* 587 F.2d 589, 596–97 (3d Cir.1978) (emphasis added).

■ Notably, no member of the Select Committee is a defendant in this suit, and no member has been questioned. Nor is there any indication that they will be. Indeed, as plaintiff observed, "[i]f anything, *intervention* raises the specter of such questioning, since the members may properly be required to testify concerning their conduct to establish the factual basis of their privilege claim." Plaintiff's Memorandum in Opposition to the Motion of the Select Committee etc. at 5. Therefore, this Court concludes that considering the record in this case, plaintiff's discovery of the documents at issue is entirely appropriate under the circumstances. In the event an attempt is made at trial to use documents or portions thereof deemed "legislative," the congressional defendants can then assert the Speech or Debate Clause doctrine and keep them out of evidence.[4] Of course, even that problem can be addressed at the pretrial stage, when the parties indicate in the pretrial order which documents they intend to offer into evidence. *See* Local Rule 35, par. (b)8.

■ As to the Select Committee's suggestion that it is *they* who must assert the privilege under Fed.R.Civ.P. 24(a), or alter-

---

**3.** Without actually deciding the issue, this Court has already made clear "there is sufficient evidence in the record 'which affords more than merely colorable substance' to plaintiff's claims." *Benford,* 502 F.Supp. at 1156.

**4.** Clearly, plaintiff still bears the burden of proving his case through evidence which does not question the legislative acts of the defendant congressional aides or their legislatively related motives. *McSurley v. McClellan* (en banc), 553 F.2d 1277 (D.C.Cir.1971).

natively, Fed.R.Civ.P. 24(b),[5] this Court vigorously disagrees. Speech or Debate Immunity extends to a legislator and to his aides. *Gravel,* 408 U.S. at 616, 92 S.Ct. at 2622. Therefore, as before, the congressional defendants can adequately assert the privilege with regard to the documents the applicants seek to protect, providing, of course, they do so correctly. While it is true the "doctrine is less absolute, although applicable, when applied to officers or employees of a legislative body, rather than to legislators themselves," *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967), it is when the legislator, and not the aide, is sued that greater deference might be warranted. *Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951).

In this case there is little doubt that aides in Congress are the defendants, and not the representatives themselves. Until now they have demonstrated a tremendous capability to raise and argue the merits of the Speech or Debate Clause as it applied to this case, and this Court has every expectation they will continue to do so in the future. Accordingly, this Court is also of the considered opinion that the Select Committee's motion to intervene "in this case to obtain a protective order," Motion by the Select Committee etc. at 1, pursuant to Rule 24(a) must be rejected on the additional ground that its interests are adequately represented by the existing parties to this litigation.

■ With regard to the Select Committee's request for permissive intervention pursuant to Rule 24(b), this Court sees no reason to bring the Select Committee into these proceedings. The delays caused by the seemingly endless motions and appeals filed by counsel have gone on long enough, and the Select Committee's participation for the sole purpose of repeating and rearguing defenses which the congressional defendants have and will continue to raise will not affect the outcome of this case. Only further and unnecessary delay and the burden of additional expense would result, demonstrating still another reason why the Select Committee's motion must be denied.

As a footnote to this opinion, on April 28, 1983, the United States House of Representatives, by resolution H.R.Res. 176, voted 386–22 to resist this Court's subpoena seeking records relevant to this case. This may cast a shadow on congressional counsel's prior agreements to abide by the subpoena.[6] However, now is not the time to address constitutional differences between this Court and Congress. First, the resolution is not germane to the principle point of this opinion, which is this Court's denial of the Select Committee's motion to intervene for the reasons stated herein. Foremost among these reasons is the failure of the proper parties to provide this Court any specific information concerning and verifying precisely which documents and/or portions thereof sought to be protected under the veil of Speech or Debate Clause. Second, appropriate motions and the foundation therefor concerning the Clerk's anticipated refusal to abide by this Court's subpoena are not presently before this Court.

---

**5.** In pertinent part, Fed.R.Civ.P. 24(a) and (b) read as follows:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**6.** Congressional counsel have indicated they will provide plaintiff those documents which pertain to acts of dissemination or arrangements to disseminate certain information to those outside of Congress, including defendant ABC. *See* Motion by the Select Committee, etc. at 13–14. One would think at a minimum, this particular understanding will remain unaffected.

Therefore, to summarize, the resolution is alluded to only as a point of interest, as it in no way alters, nor could it, the ruling of this opinion, which is that the Select Committee's motion to intervene and for a protective order is denied.

A separate order will be entered consistent with this finding.

### ORDER

In accordance with the foregoing Memorandum, and for the reasons stated therein, IT IS, this 2nd day of May, 1983, by the United States District Court for the District of Maryland, ORDERED:

That the motion to intervene "to obtain a protective order" filed on behalf of the Select Committee on Aging of the United States House of Representatives BE, and the same hereby IS, DENIED.