George H. **BENFORD**

v.

**AMERICAN BROADCASTING COMPANIES, INC., and Mrs. Isaac (Betty) Hamburger, Miss Kathleen T. Gardner, Mrs. Lillian M. Teitelbaum, David L. Holton and Margaret Osmer.**

**Civ. A. No. N–79–2386.**

United States District Court,
D. Maryland.

June 24, 1983.

---

Wilson K. Barnes and Little, Hall & Steinmann, P.A., Baltimore, Md., Dean E. Sharp and George B. Driesen, P.C., Washington, D.C., for plaintiff.

Stanley M. Brand, Steven R. Ross and Michael L. Murray, Washington, D.C., for respondent, the Clerk of the United States House of Representatives, Benjamin J. Guthrie.

NORTHROP, Senior District Judge.

Presently before the Court is the plaintiff's motion requesting that this Court hold Benjamin J. Guthrie, Clerk of the United States House of Representatives in contempt of court for failure to comply with a subpoena *duces tecum.*

The plaintiff, an independent insurance agent of the American Family Life Assurance Company, brought this suit against four staff members of the Select Committee on Aging of the United States House of Representatives (the "congressional defendants"), the American Broadcasting Companies, Inc. ("ABC"), and an ABC employee. The complaint alleged, among other things, that one of the congressional defendants infiltrated his business, as an under-cover trainee, and arranged for the plaintiff to present his standard cancer insurance sales promotion to two elderly women in Pikesville, Maryland. These women were also Select Committee employees. Without the plaintiff's knowledge or consent, the meeting was surreptitiously videotaped by ABC, and portions of the taping were broadcast on the ABC Nightly News. Shortly thereafter, the plaintiff brought suit claiming the taping and broadcasting caused him grave financial and other injury and that the defendants were subject to liability under the Maryland Wiretapping and Electronic Surveillance Act, Md.Cts. & Jud.Proc. Code Ann. § 10–401, *et seq.,* ("The Maryland Act"), the Fourth Amendment of the Constitution, Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.* ("Federal Eavesdropping Statute"), and the common law torts of civil conspiracy, malicious interference with business relations, and invasion of privacy.

The congressional defendants responded, in part, by arguing that their participation in the taping and broadcasting, if any, was protected activity under both the Constitution's Speech or Debate Clause and the common law doctrine of official (absolute) immunity. Those arguments were rejected by this Court, and the United States Court of Appeals for the Fourth Circuit affirmed. *See Benford v. American Broadcasting Companies, Inc.,* 502 F.Supp. 1148 (D.Md. 1980), *aff'd,* 661 F.2d 917 (4th Cir.1981) (UP), *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981). This Court left

open the possibility that a qualified immunity defense might be raised at trial. *Id.*

Subsequently, on June 24, 1982, the United States Supreme Court decided *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which permitted a party the option of raising a qualified immunity defense before the completion of discovery. The congressional defendants quickly reasserted this defense, and on December 22, 1982, it too was rejected. *See Benford v. American Broadcasting Companies, Inc.,* 554 F.Supp. 145 (D.Md.1982). This Court suggested that the qualified immunity defense could still be reasserted at trial if certain facts were proven. Then, without leave of Court, the congressional defendants appealed that interlocutory decision. The Fourth Circuit dismissed the appeal. *See Benford v. American Broadcasting Companies, Inc.,* 707 F.2d 504 (4th Cir.1983).

On March 22, 1982, shortly before the Supreme Court's decision in *Harlow v. Fitzgerald,* the plaintiff caused a *subpoena duces tecum* to be issued and served upon Mr. Guthrie's predecessor in office, Benjamin L. Henshaw, Jr. It demanded that as a non-party witness, he or his authorized representative produce certain documents relevant to this case. Counsel for Mr. Henshaw, the same counsel who represent the congressional defendants, filed a motion to quash on his behalf, arguing that this Court lacked jurisdiction to issue the subpoena at the United States Capitol. This Court's decision was stayed pending review of the above-mentioned *Harlow v. Fitzgerald* motions, and on January 26, 1983, the motion to quash was denied. The Clerk was ordered to arrange a time before April 30, 1983, for plaintiff's counsel to inspect certain of the documents described in the subpoena. *See Benford v. American Broadcasting Companies,* 98 F.R.D. 40 (D.Md. 1983).[1] In response to that order, Congres-

sional counsel advised this Court "that we are reserving the right to enter and interpose timely objections to production to specific or general categories of documents in a timely fashion ..." (Transcript of proceedings of January 26, 1983, page 32, lines 13–16).

On February 25, 1983, the Select Committee on Aging of the United States House of Representatives filed a motion to intervene to obtain a protective order from the subpoena *duces tecum.* Counsel for the Select Committee, the same counsel who represent the Clerk and the congressional defendants, appeared on the Select Committee's behalf. They generally contended that the subpoena requested documents protected by the Speech or Debate Clause of the United States Constitution, and that the Select Committee's intervention was necessary to raise this defense. On April 26, 1983, for the reasons fully set forth in *Benford v. American Broadcasting Companies, Inc.,* 98 F.R.D. 42 (D.Md.1983), the Select Committee's motion to intervene was denied. This Court suggested that the Clerk, and not the Select Committee, should raise these Speech or Debate Clause claims. The Court further described exactly what kind of format was acceptable. It was suggested that the Clerk submit to the Court a detailed index and description of the documents and portions of documents alleged to be beyond review, and a statement of the reasons therefor. At a minimum, the documents would then be reviewed *in camera.* It was made vividly clear that such a motion would be entertained even though April 30 had passed. *Cf. Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Nevertheless, the Clerk failed to act, apparently in deference to a resolution passed by the United States House of Representatives on April 28, 1983, two days after the

---

1. Each document ordered to be produced was described in or pertained to the veracity of the affidavits of the Select Committee Chairman, Claude Pepper (D.Fla.), and of defendant Holton, the Select Committee's Chief Investigator, which were submitted in support of the con-

gressional defendants' *Harlow v. Fitzgerald* motions. These documents were not "attached thereto" as is required by Fed.R.Civ.P. 56(e), and are still of potential relevance to, among other things, the congressional defendants' immunity claims.

hearing and four days prior to the release of this Court's written opinion. The resolution reads, in part, as follows:

> *Resolved,* That the House considers the subpoena an unwarranted and unconstitutional invasion of its constitutional prerogative to determine which of its proceedings shall be made public, and in direct contravention of the constitutional protection for congressional investigative activity; and be it further
>
> *Resolved,* That the Clerk of the House be, and hereby is ordered and directed not to produce for inspection and copying by plaintiff or any of his representatives, or to the court for inspection, any of the investigative records of the select committee sought by the subpoena ... H.R. 176, 98th Cong., 1st Sess., 129 Cong.Rec. 56, 2450–2457 (1983).

The plaintiff then filed the instant motion. Now this Court faces the distasteful task of having to decide whether the Clerk of the United States House of Representatives should be held in contempt of Court.

## DISCUSSION

■ There is no question that this Court possesses the inherent power to enforce compliance with its lawful orders through civil contempt. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). Civil contempt occurs when it has been proven by clear and convincing evidence that a person refused to do what he was ordered to do. *Gompers v. Bucks Stove and Range Co.,* 221 U.S. 418, 449, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1981); *In Re Irving,* 600 F.2d 1027, 1037 (2d Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979). The fact that the respondent in this case is the Clerk of the United States House of Representatives does not exempt him from this process. Indeed, Fed.R.Civ.P. 45(b) explicitly provides that "any person" who disobeys an order of the court may be held in contempt. *Cf. United States v. Nixon,* 418 U.S. 683, 692, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974) (where the Supreme Court inferred that this would include the President, but

suggested that it was arguable he was an exception to the rule).

■ What is most unfortunate here is that the United States House of Representatives' resolution, referred to earlier, deliberately ordered the Clerk to disobey this Court. The House suggested *it* would determine which of the Select Committee documents, if any, could be reviewed by this Court or by the plaintiff.

I cannot help but express my deep and profound concern that any member of Congress would vote in favor of a resolution which would bar evidence from a court of the United States. Such a blanket assumption of power questions the very integrity of our constitutional structure and challenges the ruling of *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60 (1803). There, Chief Justice Marshall stated: "[i]t is emphatically the province and duty of the judicial department to say what the law is."

In the case now before the Court, it is the province and duty of this Court, and not the United States House of Representatives, to say what documents are and are not protected by the Speech or Debate Clause. Because the Clerk has chosen to honor this resolution, which was never reviewed by the House Committee on the Judiciary, this Court has not received the Clerk's Speech or Debate claims, and has not had an opportunity to determine if they have any merit. Had motions been filed by the Clerk, as outlined above, and this Court's warnings been heeded, this hearing would not have occurred.

Considering these facts, this Court has no choice but to hold Benjamin J. Guthrie, the Clerk of the United States House of Representatives, in contempt of this Court. For every day this contempt continues, the Clerk shall be fined $500.00.

I will, however, stay the imposition of the fine for six days to give the Clerk the opportunity to either appeal this decision, produce the documents, or to present to this Court his specific objections. In the event objections are filed, a detailed index of the documents held in his custody and described

in the subpoena *duces tecum* should be provided, and each objection should be fully and specifically raised. This Court reserves the right to examine *in camera* any and all of these documents in order to assure their contents have been accurately characterized.

If this six-day period lapses, and the Clerk fails to properly appeal, produce, or object, the stay of the fine will be lifted. Of course any stay of the fine imposed will continue so long as a duly filed motion is under consideration or an appeal remains undecided.

The plaintiff's request for attorneys' fees will be considered once the Clerk purges himself of this contempt.