David B. ADAMS et al., Plaintiffs,

v.

AMERICAN BAR ASSOCIATION et al., Defendants.

Civ. A. No. 75-56.

United States District Court, E. D. Pennsylvania.

Aug. 25, 1975.

Jerome Daly, pro se.

Edward Cupp, pro se.

Harold W. Brobeck, pro se.

David B. Adams, pro se.

Roger L. Whitesel, pro se.

George W. Thiel, pro se.

Eugene F. Connolly, pro se.

Blair A. Griffith, Asst. U. S. Atty., Pittsburgh, Pa., for federal defendants.

William E. Zeiter, Philadelphia, Pa., Joseph A. Fischette, Pittsburgh, Pa., for defendants, Pennsylvania judges.

Gilbert J. Helwig, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants, American Bar Ass'n., Chesterfield Smith, Mr. and Mrs. William A. Meyer, Mr. and Mrs. Alexander Unkovic and Mr. and Mrs. Howard I. Scott.

David B. Fawcett, Jr., Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant, Pennsylvania Bar Assn.

James A. McGregor, Jr., Reed, Sohn, Reed & Kunselman, Beaver, Pa., for defendant, Beaver County Bar Assn.

Janet Moschetta, Asst. Atty. Gen., Pittsburgh, Pa., for defendant, Vincent J. Turriziani.

## OPINION

GERRY, District Judge.

This lawsuit is but one of a handful of civil actions initiated by plaintiffs in various courts to protest practices and policies of the government, the judiciary and professional organizations. Plaintiffs are members of an organization known as the American Constitutional Rights Protective Association. Named as defendants are virtually the

entire Pennsylvania and federal judiciary, including certain spouses, judges of the United States Tax Court and Court of Claims, the American Bar Association and various state and local bar associations, two United States Attorneys and several Assistant United States Attorneys, various government lawyers from the Department of Justice, lawyers and agents of the Internal Revenue Service, certain senators, Cabinet Officers and the President of the United States.

Jurisdiction is asserted generally under the Constitution and laws of the United States and specifically under the Declaration of Independence, the Declaration of Resolves of the First Continental Congress of 1774, the Articles of Confederation, the Northwest Ordinance of 1787, various treaties concerning the acquisition of the territories of the United States, the Magna Carta, the Common Law of Nuisance, the Sherman Antitrust Act and the Bill of Rights. With the exception of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, and the First Amendment, all of the jurisdictional grounds cited by plaintiffs are frivolous.

The complaint, a rambling 45 page document, can be divided into two sections. The first section, paragraphs 1–28, is essentially a dissertation on a variety of subjects of interest to the plaintiffs, such as the monetary system (paragraph 23); the Tax Court (paragraphs 11–14); bar associations (paragraphs 17–20); legal fees (paragraph 20 a–g); the Vietnam War (paragraph 20kk); disciplinary and professional codes (paragraph 20h–j); trial by jury (paragraph 20–o); the tax laws (paragraph 20–r); and gun control (paragraph 22–e). The second section, paragraphs 29–77, is a chronicle of plaintiffs' individual entanglements with the courts and law enforcement agents over their refusal to comply with the tax laws.

In their prayer for relief, plaintiffs seek $200 million, payable in gold and silver coins, an order declaring the United States Tax Court unconstitutional and an injunction to restrain the defendants from violating the antitrust laws, the Constitution and other laws.

This matter came on for a hearing before this Court, sitting by designation in Pittsburgh, on motions of the various defendants. The Court reserved decision on all motions.

I. *Motions of defendants to dismiss for insufficiency of service of process.*

■ All of the defendants move to dismiss for insufficiency of service of process. F.R.Civ.P. 12(b)(5). It appears that only two or three Pennsylvania defendants were served personally and that the remaining defendants were served by certified mail. Service by mail is not in keeping with the personal service requirements of F.R.C.P. 4(d) and is ineffective unless permitted by a federal or Pennsylvania statute or rule.

■ Plaintiffs contend that Pennsylvania Rule 1504(b)(2)(b) allows service by certified mail. That rule, however, only permits service by certified mail on out of state residents when a principal defendant in an equitable action has been personally served. *Potteiger v. Fidelity Philadelphia Trust Co.*, 424 Pa. 418, 424, 227 A.2d 864 (1967). It is readily apparent that there is no principal defendant in this case, and therefore plaintiffs cannot avail themselves of that rule.

■ A party making service has the burden of establishing its validity when a challenge to effectiveness of service is made. 5 Wright & Miller, *Federal Practice and Procedure* § 1352 at 582. Plaintiffs have failed to meet this requirement. Accordingly, defendants' motions to dismiss for insufficiency of service of process are granted as to all defendants who were not personally served.

II. *Motions of defendants to dismiss for failure to state a claim.*

Plaintiffs allege that the courts, certain government officials and bar associations "have conspired with each other

to monopolize, in commerce, the First Amendment rights of speech, assembly, press and petition." (Plaintiffs' complaint, paragraph 20–g). Principal among the "overt acts" cited by plaintiffs in their complaint to substantiate their claim that an unlawful conspiracy exists are the setting of minimum fee schedules, the enforcement of attorney licensing statues and the refusal of certain named judges to permit plaintiffs, none of whom are members of the bar, to represent their colleagues in other civil and criminal matters. Defendants contend that none of these alleged grievances states a legally cognizable cause of action and have moved to dismiss pursuant to F.R.C.P. 12(b)(6).

In order for plaintiffs to succeed on their antitrust count, they must show a conspiracy, a restraint of trade, interstate effect and damage. The complaint "'must describe with definiteness and certainty the combination or conspiracy relied on, as well as the acts done which resulted in damage to plaintiff, and, in doing so, must set forth the substance of the agreement in restraint of trade, or the plan or scheme of the conspiracy, or the facts constituting the attempt to monopolize.'" *Hohensee v. Goon Squad*, 171 F.Supp. 562 (M.D.Pa.1959).

Plaintiffs allege a mass conspiracy, but they fail to set forth supporting facts to define the conspiracy or demonstrate how any of the defendants participated in the alleged conspiracy. Plaintiffs cite the enforcement of attorney licensing statutes as one of the overt acts committed by defendants in furtherance of the conspiracy. Yet, plaintiffs did not bring suit merely against the members of the State Board of Law Examiners who administer the licensing program in Pennsylvania but indiscriminately sued all Pennsylvania judges. The indiscriminate naming of defendants in this suit suggests that plaintiffs are unable to show how any of the defendants participated in the alleged conspiracy beyond their mere status as judges and government agents.

This Court is aware of the difficulties faced by a plaintiff who is trying to prove the existence of a conspiracy. However, the federal courts do require that plaintiff specify with at least some degree of particularity the overt acts which defendants allegedly engaged in. A bare-bones statement of conspiracy under the antitrust laws without any supporting facts permits dismissal. *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98 (2d Cir. 1972). "On its face, the conspiracy alleged is incredulous." *Drusky v. Judges of Supreme Court*, 324 F.Supp. 332 (W.D.Pa.1971).

Plaintiffs also fail to show the existence of a restraint of trade. The antitrust laws were designed to prevent restraints to free competition in business and commercial transactions which restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services. *Apex Hosiery v. Leader*, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The antitrust laws are economic in their purpose and effect and clearly do not reach conduct which the plaintiffs perceive as a monopoly of "free trade in ideas." Parenthetically, the court doubts, in a world which has not yet reached the ominous year of 1984, whether monopolization of ideas is even possible.

Plaintiffs have also failed to show that defendants' conduct affects interstate commerce. Conclusory allegations of interference with interstate commerce are insufficient. *Seligson v. Plum Tree, Inc.*, 350 F.Supp. 440 (E.D. Pa.1972).

Nor have plaintiffs indicated how the alleged conspiracy has caused them to suffer $200 million in damages. Plaintiffs challenge the authority of Pennsylvania to license attorneys, but they do not allege that they have been improperly denied admission to or expelled from the bar of the Commonwealth of Pennsylvania. Furthermore, it is clear that the courts have the au-

thority to determine qualifications for admission to the practice of law. *Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968) ; *Feldman v. State Board of Law Examiners,* 438 F.2d 699 (8th Cir. 1971).

Plaintiffs also challenge the validity of minimum fee schedules in general but, unlike the plaintiff in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S. Ct. 2004, 44 L.Ed.2d 572 (1975), a recent Supreme Court case dealing with the antitrust implications of minimum fee schedules, they do not allege that a particular minimum fee schedule has operated to their detriment. Philosophical dissatisfaction with government policy is not the equivalent of legal injury.

■ Plaintiffs' principal grievance is that they have not been allowed to represent one another in other legal proceedings involving members of their organization. They contend that they have an absolute right to speak on behalf of each other in the federal courts. For good reason, however, courts which have considered this question have uniformly refused to permit non-lawyers to act as lawyers and argue cases. In *Guajardo v. Luna,* 432 F.2d 1324 (5th Cir. 1970), the Court of Appeals held that a suit filed on behalf of his father by a prisoner who was not a lawyer admitted to practice before any court and was not a member of the state bar could not be maintained. The court reasoned as follows :

> An ordered society has a valid interest in limiting legal representation to licensed attorneys. "The average controversy is likely to have two sides, each believed in, in good faith by honest men. In order to decide such controversies satisfactorily the case of each party must be presented thoroughly and skillfully, so that things are put in their proper setting and the tribunal may review the whole case intelligently and come to a conclusion with assurance that nothing has been overlooked, nothing misapprehended,

and nothing wrongly valued. The litigant cannot do this adequately for himself. It can only be done by well trained specialists." Pound, the Lawyer from Antiquity to Modern Times (1953) p. 25. "Furthermore proper presentation of a case by a skilled advocate saves the time of the courts and so public time and expense. It helps the court by sifting out the relevant facts in advance, putting them in logical order, working out their possible legal consequences, and narrowing the questions which the court must decide to the really crucial points." *Id.* p. 26. Moreover, prohibiting laymen from representing other persons in court allows courts to impose upon lawyers the responsibility incident to the professional spirit and appropriate to those who are "officers of the court".

In short, the requirement that only licensed lawyers may represent others in court is a reasonable rule that does not offend any constitutional guarantee.

In addition, the precise issue raised by plaintiffs has been decided against them by at least three federal courts. The Court of Appeals for the Seventh Circuit held that "the district court is not obligated to appoint counsel of defendant's choice where the chosen attorney is not admitted to practice." *United States v. Jordan,* 508 F.2d 750 (7th Cir. 1975). Likewise the district court in *Whitesel & Thiel v. Milligan,* No. C1 74–329 (S.D.Ohio, December 26, 1974), termed as "frivolous" plaintiffs' claim that their Sixth Amendment right to counsel had been violated by the denial of Thiel's request to be legal counsel for Whitesel in a prior criminal proceeding. Similarly, in *United States v. Stockheimer,* 385 F.Supp. 979 (W.D.Wis.1974), the court determined that since a disbarred lawyer and unlicensed attorney were not "counsel" within the meaning of the Sixth Amendment, plaintiffs could not claim that their constitutional right to counsel had been denied.

Plaintiffs in this proceeding have been allowed to represent themselves. The right of self-representation has a solid basis in our statutes and decisional law. 28 U.S.C. § 1654; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In addition, plaintiffs may, of course, assist one another behind the scenes in preparing for trial. However, there is no authority for the proposition that courts must abandon their inherent power to regulate the practice of law. *Goldfarb v. Virginia State Bar, supra.* For these reasons, the Court holds that plaintiffs have failed to state a claim under the antitrust laws.

 Plaintiffs also claim that their First Amendment rights have been violated in that they, as non-lawyers, have not been permitted to represent one another in various civil and criminal cases. Plaintiffs cite in their brief an important trilogy of Supreme Court cases which give broad constitutional protection to the right of associations to petition for redress of grievances. *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1962); *Brotherhood of Railway Trainmen v. Va. State Bar,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1963); *United Mine Workers v. Illinois State Bar Assn.,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967).

The factual distinctions between the cases cited and the present action are enormous. In *Button,* the court held that a state may not, under the guise of prohibiting professional misconduct, prevent an association from employing attorneys to assist in litigating cases involving racial discrimination. The court's decision rested in part on the finding that the mere existence of the anti-solicitation statute would drastically limit legitimate civil rights activity. Here there is no indication that the plaintiffs' access to the courts has been unduly restricted; in fact, there is every indication to the contrary, judging from the plethora of lawsuits which plaintiffs have filed. Additionally, in *Button,* the state failed to advance any substantial regulatory interest in support of its statute. Here the state's interest in regulating the practice of the legal profession is substantial.

In *Brotherhood of Railway Trainmen,* the court held that a labor union may advise injured members to obtain legal assistance before settling claims and may recommend specific lawyers to handle such claims. The right of members to "assist and advise each other" in selecting attorneys is a far cry, however, from the right proclaimed by plaintiffs here, namely: the right to determine among themselves who shall practice before the federal courts.

Finally, in the *United Mine Workers* case, the Supreme Court held that a state decree which prevented a union from hiring attorneys on a salary basis to assist the members in asserting their legal rights violated the First Amendment. Here, there is nothing preventing plaintiffs from hiring an attorney to represent the interests of their association.

Accordingly, since plaintiffs have failed to state a claim against any of the defendants under any of the theories proposed in their pleading, the complaint will be dismissed. F.R.C.P. 12(b)(6).

### III. *Defendants Defense of Immunity*

Plaintiffs claim to have sued the named judges, prosecutors and government officials in their individual capacities. It is readily apparent from the complaint, however, that plaintiffs are suing these defendants by reason of their status as judges or government officials or because in the performance of their duties they have become involved in cases in which the plaintiffs also were parties.

 The principle that judges are immune from suit except for actions clearly outside their jurisdiction is deeply rooted in Anglo-American law. *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966). Since

plaintiffs have failed to establish that defendant members of the judiciary were acting outside their jurisdiction, the doctrine of judicial immunity bars relief against all named judges.

█ The complaint also names as defendants two United States Attorneys, as well as various assistant United States Attorneys. The courts have consistently held that prosecutors are entitled to the same immunity as judges. *Bauers v. Heisel, supra.*

█ With respect to the Cabinet Officers, congressmen and other federal officials named as defendants, the rule of official immunity applies. *Barr v. Mateo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434 (1959). In *Barr v. Mateo,* the Supreme Court held that federal officers are immune from suit so long as they are acting within the outer perimeter of their official duties. This doctrine is broad enough to encompass the government officials named as defendants in this action.

█ Defendants are also entitled to a special immunity under the antitrust laws. The Sherman Act prohibits individual and not state action. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). It does not apply to government activities performed by government agents. *Union Carbide v. Nisley,* 300 F.2d 561 (10th Cir. 1962). Since the state and federal judges named as defendants are in actuality being sued in their judicial capacities, the antitrust laws do not apply to them.

## IV. *Defendants Defense of Res Judicata*

This is not the first suit filed by a member of the American Constitutional Rights Protective Association against virtually the entire federal judiciary and numerous other judges and officials. In January of this year, Jerome Daly filed suit in the Northern District of Illinois, Eastern Division, alleging the existence of a mass conspiracy to violate his civil and constitutional rights. *Jerome Butler and Jerome Daly v. The American Bar Association, et al.,* No. 75–C–72, (U.S.D.C.,N.D.Ill.). On January 9, 1975, Judge McGarr dismissed the complaint for failure to state a cause of action. Defendants now seek to invoke the defense of res judicata.

█ In determining the validity of a plea of res judicata, three questions are pertinent: (1) Was the issue decided in the prior adjudication identical with the one presented in the action? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with the party to the prior adjudication? *Scooper Dooper v. Kraftco Corp.,* 494 F.2d 840 (3d Cir. 1974).

The first two requirements for the application of res judicata are met here. The complaint in the Illinois case is virtually identical, in language and in substance, to the complaint filed in this lawsuit. A judgment dismissing a complaint pursuant to Rule 12(b)(6), such as that entered by Judge McGarr, is presumed to be on the merits for res judicata purposes. *Ira Gissen v. Tachman,* 401 F.Supp. 310 (D.N.J., 1975).

█ The third requirement becomes a problem in the instant case. The fact that new defendants have been added in this action is not controlling. *Drusky v. Judges of Supreme Court,* 324 F.Supp. 332 (W.D.Pa.1971). New plaintiffs, however, have generally been successful in preventing the application of res judicata as to them, even if the causes of action are identical. Perhaps an expanded definition of "privity" would permit the doctrine to be used against those new plaintiffs in the second action who are parties in name only and who had precisely the same interest as the losing party in the prior adjudication. The Court refuses to so hold. Only plaintiff Daly's cause of action is barred by res judicata.

## VI. *Disposition of Other Motions*

Having determined that the complaint fails to state a cause of action, the other motions become moot. Were it not for this disposition of the action, the Court

would order stricken the scandalous and impertinent matter which makes up the bulk of plaintiffs' pleadings. F.R.C.P. 11, 12(f).

### VII. *Defendants' Request for an Injunction*

The Pennsylvania judges and the federal defendants have moved to enjoin plaintiffs and others acting in concert with plaintiffs from initiating lawsuits similar to the present action. Defendants cite the extraordinary number of lawsuits which have been filed by plaintiffs throughout the country, including three which were filed after the commencement of this action. Defendants contend that this Court, as an incident of its inherent powers under 28 U.S.C. § 1651(a), may and should issue an injunction to prevent these plaintiffs and their associates from further harassing judges, prosecutors and professional associations and causing an undue expenditure of time, money and effort at all levels of the judicial system.

■■■ There is substantial authority for the granting of injunctions in those rare situations where such action is necessary to prevent harassment of individuals and government officials through the repeated filing of baseless complaints. In *Meredith v. John Deere Plow Co.*, 261 F.2d 121 (8th Cir. 1959), the court determined that under the facts the plaintiff could never have a valid cause of action. The court held that "the subjecting of another to repeated, baseless vexatious suits at law on some particular matter is, without reference to other considerations, a sufficient ground for the issuance of an injunction against the perpetrator." *Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I.1962) is in many respects similar to the present action. Plaintiff sued several judges, United States Attorneys and the Clerk of the Court, alleging as the court found, "no more than that the plaintiff has been denied recovery in the various actions instituted by him" in federal and state court. The district

court found: first, a past history of similar suits brought by the plaintiff; second, a persistent attempt to relitigate cases dismissed by federal and state judges by charging them with conspiracy to violate plaintiff's civil rights; third, that unless an injunction issued, the plaintiff will continue to institute groundless and purely vexatious litigation against these defendants and other judges and public officials; and fourth, that the effect of such litigation would be to further harass the defendant, burden the office of the clerk and amount to a large expense to the government. Therefore, an injunction was issued.

In *Ruderer v. United States*, 462 F.2d 897 (8th Cir. 1972), cert. denied 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972), the plaintiff alleged that he was wrongfully discharged from employment with the United States Army and filed 21 actions against fellow employees alleging conspiracy to discharge him. The district court found that plaintiff had filed his suit in bad faith and in furtherance of a personal vendetta against the United States. The district court also found that plaintiff had been afforded a full opportunity to present his claims and that further suits on these claims would needlessly consume the court's time. The appellate court held that appellant's affinity for litigation, standing alone, did not provide a sufficient reason for issuing an injunction prohibiting him from bringing further suits on this claim. However, the Court of Appeals reasoned that since appellant had already had his day in court, "in this day of burgeoning court calendars, he must be restrained if others are to have theirs." He was thus permanently enjoined from commencing any proceeding in an attempt to relitigate facts surrounding his discharge from the Army.

Another recent case which is on point is *Boruski v. Stewart*, 381 F.Supp. 529 (S.D.N.Y.1974), Boruski was an ambitious litigator who had been unlawfully discharged from military service. He

recovered back pay in his first lawsuit but, not satisfied, he proceeded to file a number of suits against the Veterans Administration, the General Accounting Office, the Air Force, the Justice Department and various federal judges and officials. The court noted the plaintiff's pattern of engaging in repetition and vexatious litigation and found that such conduct was likely to continue unless enjoined. "It is not uncommon for a disappointed litigant to bring a subsequent action alleging that the adverse decision resulted from prejudice or misconduct of virtually every person in authority who functioned on his claims; and where it is apparent that the litigation is baseless the issuance of an injunction is proper." See also *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972) and *DunLeavay v. Hallahan*, Civ. No. 72 4731 (S.D.N.Y. 1972), decided November 22, 1972.

It is apparent from the manner in which plaintiffs have proceeded that their primary motive here is not vindication of a legal right but rather harassment of the judicial system and particular individuals. Earlier dismissals of similar rambling complaints put plaintiffs on notice that the federal courts could not possibly grant relief in actions of this tenor. The indiscriminate naming of defendants so as to include virtually the entire federal and Pennsylvania judiciary and the judges' spouses is evidence of disenchantment with the judicial process in general, rather than a grievance against a limited number of defendants who engaged in specific unlawful behavior. The predictably belated motion to disqualify this Court from hearing the motions on the long scheduled return date is indicative of plaintiffs' evident desire to involve as many judges as possible in this case without ever reaching a hearing on the merits. The Court concludes that plaintiffs' practice of engaging in vexatious litigation and harassing government officials is likely to continue unless enjoined.

Accordingly, I shall enter an order perpetually enjoining and restraining the plaintiffs from instituting any future action or encouraging, aiding, assisting, abetting or acting in concert with any other person or persons to institute any future action based on any claim or cause of action which was or could have been asserted by plaintiffs in the complaint herein.

## VIII. *Defendants' Motion for Attorney's Fees*

The federal defendants and the Pennsylvania judges move for an award of attorney's fees. They contend that such an award is within the equitable power of the court and is proper in these rare cases where a party has acted in bad faith, vexatiously or for oppressive reasons. *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). They cite the recent Supreme Court decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) as authority for the awarding of counsel fees.

While the Court is not inclined to award attorney's fees at this time, it will not hesitate to reexamine the question of the award of attorney's fees should plaintiffs violate the injunction.