SCHAEFER/MAY MOTOR
SALES, LTD.

v.

MID–ATLANTIC TOYOTA
DISTRIBUTORS, INC.

Civ. No. Y–83–2799.

United States District Court,
D. Maryland.

March 30, 1984.

Robert G. Levy, Berryl A. Speert, Alan P. Hillman, and John M. Belferman, Baltimore, Md., for plaintiff.

J. Coleman Bean, and C. Michael Deese, Washington, D.C., for defendant; Peter E. Keith, Baltimore, Md., of counsel.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff, an authorized Toyota motor vehicle dealer has filed this action against defendant, a distributor for Toyota vehicles, ("MAT"), alleging that it has been damaged as a result of federal antitrust and state law violations. Defendant has filed this motion to dismiss on the grounds that Count 1 of the complaint fails to state a claim under the federal antitrust laws. The parties appear to be in agreement that if this motion were granted, the Court would lack subject matter jurisdiction over Counts 2, 3, and 4 which allege causes of action under Maryland law. In light of the strict standard for dismissal in antitrust cases, *see In re Mid-Atlantic Toyota Antitrust Litigation*, 525 F.Supp. 1265, 1280 (D.Md.1981), this Court finds that Count 1 does state a claim under the federal antitrust laws giving the Court pendent jurisdiction over the state claims. However, that portion of Count 1 which alleges allocation reductions in retaliation for offshore purchases of Toyotas by plaintiff does not state a claim for relief under the federal antitrust laws and is, therefore, dismissed. *See* paragraphs 16, 17, 25(c) of the complaint.

Defendant argues that Count 1 should be dismissed: a) because plaintiff has failed to demonstrate "antitrust injury," b) because plaintiff has failed to allege the conspiracy with sufficient specificity, and c) because plaintiff has failed to allege that the conspiracy had an adverse effect upon competition. Each of these contentions will be addressed seriatim.

## ANTITRUST INJURY

Defendant argues that plaintiff has not suffered antitrust injury as a result of the alleged conspiracy between defendant MAT and its dealers. That conspiracy has already been the subject of extensive litigation in this Court. *See In re Mid-Atlantic Toyota Antitrust Litigation*, 560 F.Supp. 760 (D.Md.1983). Defendant contends that plaintiff's injury, an alleged reduction in vehicle allocations, could not have resulted from a conspiracy to fix retail prices aimed at retail purchasers and, therefore, is not the type of antitrust injury actionable under Section 4 of the Clayton Act. *See* defendant's memorandum in support of motion to dismiss ("defendant's memorandum") at 17, defendant's reply memorandum in support of motion to dismiss ("defendant's reply") at 12.

The requirement that a particular violation of the antitrust laws result in antitrust injury was first announced in *Brunswick Corporation v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). There plaintiffs who operated bowling centers sued for treble damages for alleged injuries resulting from defendant's acquisition and operation of similar centers. Plaintiffs asserted that their profits would have been higher if defendant had not acquired the competitive alleys because, absent such acquisition, those alleys would have gone out of business. The Supreme Court rejected this theory for recovery under Section 7 of the Clayton Act. The Court ruled:

> Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's act unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

429 U.S. at 489, 97 S.Ct. at 697.

The Supreme Court has recently readdressed the issue of antitrust injury in two cases. *See Blue Shield v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982); *Associated General Contractors of California, Inc. v. California State Council of Carpentry*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). In *McCready*, the Court found that a plaintiff, denied reimbursement under a Blue Shield plan for payments she had made to a clinical psychologist, had standing to sue Blue Shield because she had suffered an antitrust injury. Blue Shield reimbursed plan subscribers for psychotherapy provided by psychiatrists but not for treatment provid-

ed by psychologists unless the treatment was billed through and supervised by a physician. Plaintiff did not comply with these requirements and Blue Shield refused to reimburse her for payments made to her psychologist. Plaintiff brought suit alleging that Blue Shield and the Neuro-psychiatric Society of Virginia had engaged in a conspiracy to "exclude and boycott clinical psychologists from receiving compensation" under the Blue Shield plan in violation of § 1 of the Sherman Act. Concluding that under these facts the plaintiff had suffered an antitrust injury, the Supreme Court noted that although the primary targets of the conspiracy were psychologists, the plaintiff's injury was a foreseeable result of the conspiracy, was a necessary step in effecting the ends of that conspiracy, was "inextricably intertwined with the injury the conspirators sought to inflict on psychologists and the psychotherapy market," 457 U.S. at 484, 102 S.Ct. at 2551, 73 L.Ed.2d at 164, flowed from that which makes the defendant's acts unlawful, and fell "squarely within the area of congressional concern." 457 U.S. at 479, 484, 102 S.Ct. at 2549, 2551, 73 L.Ed.2d at 161, 164.

In *Associated General Contractors*, the Court confronted a labor union's complaint alleging that a multi-employer association and its members coerced certain third parties as well as its own members to enter into business relationships with non-union firms. The union asserted that a result of this coercion unionized contractors lost business and the union's business activities were restrained. The Court ruled that in order to determine whether the union could recover for its alleged injuries it had to evaluate the plaintiff's harm, the alleged wrongdoing by the defendants and the relationship between them. 103 S.Ct. at 907. In determining that the union had not alleged an antitrust injury, the Court looked to a number of factors which it suggested were to be used by courts in evaluating each situation. 103 S.Ct. at 908 n. 33. The Court noted that the union was neither a consumer nor a competitor in the market in which trade was restrained; that the injury was only indirectly caused by the alleged antitrust violation; that its damages were remote and speculative; that its claims more clearly implicated labor market interests; that there was a risk of duplicative recovery; and that more direct victims of the alleged conspiracy existed. *Id.* 103 S.Ct. at 908–13.

■ Application of the *Associated Contractors* factors to the present case indicates that plaintiff has alleged antitrust injury. Here defendant was a competitor in the affected market. The injury, a reduction in the allocation of vehicles, was foreseeable and presumably a necessary step in effecting the ends of the price-fixing conspiracy. *See McCready, supra.* Plaintiff is a direct victim of the conspiracy. The damages suffered by plaintiff can only be recovered by it and are not duplicative of the price-fixing overcharge damages suffered by consumers. Moreover, they do not appear to be unduly speculative. The weight of these factors suggests that the injury alleged in this case is antitrust injury. Like the plaintiff in *McCready*, plaintiff's injury in this case " 'flows from that which makes the defendants' acts unlawful' within the meaning of *Brunswick*, and falls squarely within the area of congressional concern." 457 U.S. at 484, 102 S.Ct. at 2551, 73 L.Ed.2d at 164.

## INSUFFICIENCY OF CONSPIRACY ALLEGATIONS

Defendant argues that plaintiff has failed to allege the existence of a conspiracy in sufficient detail and claims that the complaint details a price-fixing conspiracy rather than a conspiracy to reduce plaintiff's vehicle allocations. *See* defendant's reply at 5–6; defendant's memorandum at 13–17. As noted above, this Court is already familiar with many of the facts giving rise to this case and has held that, if proven, the alleged conspiracy between defendant and its dealers to fix prices through the mechanism of the Polyglycoat Total Concept Program would constitute a *per se* violation of Section 1 of the Sherman Act. *In re Mid-Atlantic Toyota*, 560 F.Supp. 760, 783 (D.Md.1983). Indeed, in

light of this background, the cases cited by defendant to support its contentions that plaintiff has failed to allege the Total Concept conspiracy in sufficient detail are easily distinguishable. *See, e.g., Adams v. American Bar Association,* 400 F.Supp. 219 (E.D.Pa.1975).

However, defendant argues that these allegations concerning the Total Concept Program detail a price-fixing conspiracy aimed at consumers not a conspiracy which would have injured plaintiff. A recent Supreme Court opinion suggests that defendants have taken too narrow a view of the actions that plaintiff complains of, a reduction in vehicle allocations as a result of its refusal to participate in the price-fixing conspiracy. In *Monsanto Co. v. Spray-Rite Service Corp.,* —— U.S. ——, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), the Supreme Court indicated that if a defendant and others "had a conscious commitment to a common scheme designed to achieve an unlawful objective," and the challenged action was taken as part of or pursuant to that scheme such action could be subject to the antitrust laws. In that case, the plaintiff-distributor sued the defendant-manufacturer under Section 1 claiming that it had been terminated in furtherance of a conspiracy between the defendant and some of its other distributors to fix resale prices. The Court stated that "[I]f ... there was evidence of an agreement with one or more of the distributors to maintain prices, the remaining question is whether the termination of [plaintiff] was part of or pursuant to that agreement." *Id.* at ——, 104 S.Ct. at 1472. The Court concluded that it would be reasonable to find that it was in that case, "since it is necessary for competing distributors contemplating compliance with suggested price to know that those who do not comply will be terminated." *Id.*

■ For the purposes of this motion, a similar inference can be drawn in this case. Indeed, in light of the previous finding that a tacit agreement may have existed to raise prices, *see* 560 F.Supp. at 783, it hardly seems rank speculation to infer that de-

fendant may have undertaken to reduce plaintiff's allocations as "part of or pursuant to that agreement." Therefore, even though plaintiff has not come forward with specific facts demonstrating that the allocation reductions were a specific part of the agreement, as defendant argues it must, this Court declines to grant defendant's motion on those grounds.

■ The Court cannot reach the same conclusion with regard to plaintiff's allegations concerning a retaliatory reduction in allocation because plaintiff made offshore purchases in late 1982. *See* paragraph 16 of the complaint. Since the Total Concept Program concerned 1980 Toyotas, 560 F.Supp. at 765, it is impossible to infer that any retaliation for offshore purchases in 1982 was in furtherance of a conspiracy relating to 1980 cars. Plaintiff has failed to allege any facts suggesting concerted action in any retaliatory action MAT may have taken against plaintiff for these 1982 purchases. Therefore, plaintiff's federal antitrust claim with regard to those purchases will be denied.

## ADVERSE EFFECT UPON COMPETITION

■ Defendant argues that plaintiff must allege "public injury" or an adverse effect upon competition. Yet, in fact the complaint specifically alleges that the conspiracy had "the effect of raising, fixing, stabilizing or maintaining prices of Toyota motor vehicles, parts, and accessories ..." Indeed, because this Court has already concluded that the underlying conspiracy, if proven, would constitute a *per se* violation of Section 1, this Court questions whether such an allegation is necessary when the decision defendant relies upon specifically states that *per se* violations are an "exception to the requirement of an allegation of anticompetitive effects in a Section 1 Sherman Act complaint." *Havoco of American, Ltd. v. Shell Oil Co.,* 626 F.2d 549 (7th Cir.1980).

944

## ORDER

In accordance with the statements in the Memorandum attached hereto, it is this 30th day of March, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's motion to dismiss BE, and the same IS, hereby DENIED IN PART AND GRANTED IN PART; and

2. That a copy of this Memorandum and Order be forwarded to all parties.