W. Douglas **WILLIAMS**,
Plaintiff–Appellee,

v.

Honorable Jack **BROOKS**,
Defendant–Appellant.

No. 90–2406.

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1991.

Steven R. Ross, Gen. Counsel to the Clerk, Robert M. Long, Asst. U.S. House of Representatives, Charles D. Tiefer, Deputy Gen. Counsel to the Clerk, Washington, D.C., for defendant-appellant.

Ella T. Tyler, Houston, Tex., for plaintiff-appellee.

Before REAVLEY, GARWOOD and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

The sole issue in this interlocutory appeal is whether defendant-appellant The Honorable Jack Brooks (Congressman Brooks), as a Member of Congress, is absolutely immune under the doctrine of official immunity from a claim for defamation brought by a private citizen for comments made in a television interview. We hold that he is not, and we therefore affirm the district court's denial of his claim of official immunity.

### Facts and Proceedings Below

In 1983, the State of Texas established the Battleship Texas Advisory Board (Board) to promote the restoration of the Battleship Texas. The Board sought private donations to fund the restoration. The plaintiff-appellee, W. Douglas Williams (Williams), works as a fund raiser in political affairs, both individually and through Texas Dynamics, Inc., a corporation of which he is the sole shareholder. Williams contracted with the Board to raise money for the restoration of the battleship.

In addition to the solicitation of private donations, those interested in the restoration effort sought public funds. Their efforts were successful; on October 30, 1986, Congress enacted the Continuing Appropri-

ations for Fiscal Year 1987. In part of this continuing resolution providing for defense appropriations, the law made $5,080,000 available for a grant to the Board. After the appropriations bill was passed, but before funds were disbursed under the grant, the Board terminated Williams' contract. Williams contended that his contract entitled him to compensation equivalent to ten percent of the federal appropriation. A controversy developed over the compensation to be paid by the Board to Williams.

During the course of the controversy, in January 1987, Congressman Brooks wrote a letter to Secretary of the Navy John F. Lehman regarding the federal appropriation. The letter referred to Williams' claim for a share of the federal funds and stated that, in Congressman Brooks' opinion, it would "be against public policy—and possibly illegal as well—for Federal funds to be diverted to such use." Congressman Brooks requested a delay in administrative action before any disbursement of funds. A copy of the letter was sent to Williams, whose counsel sent his own letter in response. Secretary Lehman agreed that the appropriated sums should not be used for fund raising, and the grant was withdrawn until the issue could be resolved.

The allegedly defamatory statements were made by Congressman Brooks in a television interview at his Washington government office. Williams' complaint alleges that:

"[O]n or about February 14, 1987, the Defendant, Jack Brooks, was interviewed in his Washington office by a representative of KTRK television, also known as Channel 13, which is located in Houston, Texas, and said interview related to the controversy which had arisen in connection with the restoration of the Battleship Texas. During said interview, which was videotaped or otherwise recorded by agents of KTRK television, the Defendant spoke the following words of

and concerning the Plaintiffs which in the context of said interview could only be understood to refer to Plaintiff Williams and his corporation. In this regard, Defendant Brooks stated that Plaintiff Williams was 'an ordinary hustler' and/or 'a small-time hustler.' Defendant Brooks further stated that Plaintiff Williams' conduct was 'illegal and immoral' and that 'five and ten percenters' such as Plaintiff Williams 'were put in jail under Eisenhower and that's where they ought to put them.' " [1]

Congressman Brooks contends that his position on the controversy regarding remuneration for Williams was being enacted into law at the time his statement was made to KTRK. Williams disagrees, and the trial court's order states that there was no legislative action pending at the time Congressman Brooks was interviewed. In any event, on March 5, the week after the KTRK broadcast, the House Subcommittee on Defense, with jurisdiction over the Battleship Texas grant, had a meeting regarding the fiscal year 1987 supplemental appropriations. On March 25, the House Appropriations Committee reported the Supplemental Appropriations Bill for Fiscal 1987 to the House. The bill contained language clarifying that the monies appropriated for the Battleship Texas were to be used only for restoration and not for remuneration of fund-raising activities. The supplemental appropriations bill was signed into law on July 11, 1987, with the added provision that the grant would be made to the Texas Parks and Wildlife Department instead of the Board.

■ On February 22, 1988, Williams filed suit against Congressman Brooks in state court, alleging defamation based on Congressman Brooks' statements in the television interview. The case was removed to federal court pursuant to 28 U.S.C. § 1442(a)(1) and (4).[2] On June 9,

---

**1.** According to the brief of Congressman Brooks in this Court, he was actually referring to the 1949 War Assets Administration lobbying scandal, during the Truman presidency.

**2.** Williams did not contest the removal below and does not contest it here. Nonetheless, be-

cause it is doubtful whether the federal district court would have had jurisdiction of the case had it been filed in that court, it would appear that the question of removal has not been waived by Williams. *See Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344,

1988, Congressman Brooks moved to dismiss the suit, claiming that he is entitled to official immunity under federal law. After briefing and oral argument, the district court in March 1990 denied the motion, and Congressman Brooks then perfected this pretrial appeal.

### Discussion

■ Although the denial of a motion to dismiss is not a final judgment appealable under 28 U.S.C. § 1291, the denial of the instant motion, which raises a colorable claim of immunity, is appealable under the collateral order exception to the finality requirement of section 1291. *See Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979) (Speech or Debate Clause immunity); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982) (presidential absolute immunity); *Mitchell v. Forsyth,* 472 U.S.

511, 105 S.Ct. 2806, 2814–15, 86 L.Ed.2d 411 (1985) (qualified immunity); *Williams v. Collins,* 728 F.2d 721, 724–26 (5th Cir. 1984) (absolute immunity under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959)).

The district court's denial of a motion to dismiss on immunity grounds presents a question of law, reviewable *de novo. Walter v. Torres,* 917 F.2d 1379, 1383 (5th Cir.1990).

The district court held that official immunity for federal legislators is coextensive with their protection under the Speech or Debate Clause. Congressman Brooks argues that congressmen are entitled to official immunity from suits for common law torts even when immunity would not be available under the Speech or Debate Clause.[3]

1346–48, 31 L.Ed.2d 612 (1972); *Lirette v. N.L. Sperry Sun, Inc.,* 820 F.2d 116, 117–18 (5th Cir. 1987) (en banc). 28 U.S.C. § 1442(a) provides in pertinent part:

"A civil action ... commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

. . . . .

"(4) Any officer of either House of Congress, for any act in the discharge of his official duty under an order of such House."

Removal jurisdiction would appear not to lie under section 1442(a)(4), as Congressman Brooks was not acting "under an order of" the House of Representatives. Such removal is proper under section 1442(a)(1), however, as a congressman is an "officer of the United States" within the meaning of that subsection. *Hill Parents Ass'n v. Giaimo,* 287 F.Supp. 98, 99–100 (D.Conn.1968) (Timbers, J.) (Member of Congress; libel); *Preston v. Edmondson,* 263 F.Supp. 370, 372 (N.D.Okla.1967) (same). *See also Richards v. Harper,* 864 F.2d 85, 86 (9th Cir.1988) (Member of Congress is an officer of the United States within section 1442(a)(1)). As *Giaimo* and *Edmondson* reflect, the "color of ... office" requirement has been broadly construed in cases involving a similar context. *See also Lepucki v. Van Wormer,* 765 F.2d 86, 88–89 (7th Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985) (libel properly removed under section 1442(a)(1)); *Stein–Sapir v. Bird-*

*sell,* 673 F.2d 165 (6th Cir.1982) (same; libel and slander); *Poss v. Lieberman,* 299 F.2d 358, 359 (2d Cir.), *cert. denied,* 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962) (same; libel); *Malone v. Longo,* 463 F.Supp. 139, 141–42 (E.D.N.Y.1979) (same; libel and slander); *Abrams v. Playle,* 414 F.Supp. 634, 636 (D.Guam 1976) (same; slander). While section 1442(a)(1) implicitly contains the related requirement of assertion of a colorable federal defense, *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 966, 103 L.Ed.2d 99 (1989), this is met in the instant case by Congressman Brooks' assertion of immunity. *See, e.g., Poss,* 299 F.2d at 359, and the other libel or slander cases cited above. We further observe that section 1442(a)(1) does not require that the case be one that could have initially been filed in federal court. *See IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.,* 676 F.2d 152, 156 (5th Cir.1982). *See also Christensen v. Ward,* 916 F.2d 1462, 1483 (10th Cir. 1990); *State of Florida v. Cohen,* 887 F.2d 1451, 1454 (11th Cir.1989); *Greenspun v. Schlindwein,* 574 F.Supp. 1038, 1041 (E.D.Pa.1983).

3. Congressman Brooks' motion to dismiss was based solely on official immunity under federal law. However, on February 14, 1989, he filed a "Supplemental Brief With Respect to Recent Statutory Enactment," calling attention to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (FELRA), Public Law 100–694, which was signed into law November 18, 1988. This supplemental brief pointed out that FELRA amended the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), 2671–80, and (1) extended FTCA coverage to the judicial and legislative branches, 28 U.S.C. § 2671;

## Speech or Debate Clause Immunity

The Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." The clause has been interpreted to protect only "purely legislative activities." *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 2537, 33 L.Ed.2d 507 (1972) (" 'news letters' to constituents, news releases, and speeches delivered outside the Congress ... are political in nature rather than legislative"). In *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), the plaintiff sued a member of Congress for making allegedly defamatory statements in a widely distributed press release. The Supreme Court held that the Speech or Debate Clause did not protect the issuance of the press release because "the transmittal of ... information by individual Members in order to inform the public ... is not a part of the legislative function or the deliberations that make up the legislative process." 99 S.Ct. at 2687. Congressman Brooks concedes that controlling Supreme Court precedent precludes a defense of Speech or Debate Clause immunity to this lawsuit.

## Official Immunity

█ The judicially-created doctrine of official immunity protects federal officials from civil suits arising out of actions taken in the performance of their official duties and responsibilities. In *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court held that the

---

(2) provided that the FTCA would be the exclusive remedy for personal injury (and other) claims arising from the negligent or wrongful act or omission of a governmental employee acting within the scope of his office or employment (except for constitutional and certain statutory claims), 28 U.S.C. § 2679(b); (3) provided that upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time, the suit would be deemed one against the United States and it would be substituted as the party defendant, 28 U.S.C. § 2679(d); and (4) was applicable to cases pending as of the date of its enactment. Public Law 100–694 § 8(b) (set out as note under 28 U.S.C. § 2679).

The supplemental brief further noted that "discussions" had been initiated with the Department of Justice "with respect to the appropriate certification process to be followed in instances in which, like here, the federal official or employee is not part of the Executive Branch," and suggested that it would be appropriate to postpone oral argument on the motion to dismiss, which was then set for February 27, 1989, "[i]n order to permit such discussions to proceed." Alternatively, it was suggested that the court might want to hear argument on the immunity issue "and, if the case is not dismissed at that point, to set a schedule for briefing and decision of the statutory issue." In a February 23, 1989 response to this supplemental brief, Williams asked for additional time to brief the FELRA–FTCA issue. The district court then reset oral argument on the motion to dismiss for July 10, 1989.

At the July 10, 1989 hearing, Congressman Brooks' counsel informed the court that "[t]here has not been progress" in working out the certification matter with the Department of Justice, "so we have not been in the position to move to dismiss under the Federal Tort Claims Act and

we are not raising that as a ground of dismissal." The district court's opinion denying the motion to dismiss did not advert to the FTCA or FELRA, and neither of the parties has adverted to it in the present appeal. Consequently, we express no opinion regarding it.

The record contains no indication that the Attorney General has made the scope of office or employment certification provided for in section 2679(d). Under section 2679(d)(3), if the Attorney General refuses to make such certification "the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment" and if the court so certifies the action shall then become one against the United States and it shall be substituted as the party defendant (no such petition or certification is reflected in the record here). Upon substitution of the United States, the suit proceeds as other suits under the FTCA "subject to the limitations and exceptions applicable to those actions," section 2679(d)(4), and, among other things, "the United States shall be entitled to assert any defense based upon judicial or legislative immunity which would otherwise have been available to the employee ... as well as any other defenses to which the United States is entitled." 28 U.S.C. § 2674. Under 28 U.S.C. § 2680(h) the provisions of the FTCA "shall not apply to— ... (h) Any claim arising out of ... libel, slander...." However, in *United States v. Smith*, — U.S. —, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991), a suit against a governmental employee for course of employment negligence where the injury arose in a foreign country and was hence exempted from the FTCA by section 2680(k), the Court held that the FELRA nevertheless authorized substitution of the United States as the sole defendant, and subsequent dismissal of the suit on the basis of section 2680(k).

acting director of the Office of Rent Stabilization was immune from a defamation action because his press statements were "within the outer perimeter of [his] line of duty." 79 S.Ct. at 1341. The Court reasoned that

> "officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of th[eir] duties— suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Id.* at 1339.

■ Although the doctrine of official immunity provides only a qualified immunity where constitutional torts are alleged, *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982), it provides "absolute immunity from suits [for torts] at common law." *Id.* 102 S.Ct. at 2732–33; *Claus v. Gyorkey*, 674 F.2d 427, 431 (5th Cir.1982) ("Absent an allegation of a tort of constitutional magnitude, federal officials are entitled to absolute immunity for ordinary torts committed within the scope of their jobs").

■ A variety of federal and local officials are protected by the doctrine of official immunity.[4] Relying primarily upon *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), and *Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129, 134–135 (5th Cir.1986), the district court held that in the case of legislative officials, "absolute official immunity merely fulfills the mandate of the Speech or Debate Clause," and, "[i]n practice, the scope of protection of legislative official

immunity is equivalent to that of the Speech or Debate Clause." We agree with the district court's reading of these precedents.

In *McMillan*, the parents of District of Columbia school children sought damages and declaratory and injunctive relief for invasion of privacy that they claimed resulted from public dissemination of a congressional committee report assessing the state of the District of Columbia school system. The report included copies of failing test papers, lists of absences, and documents relating to disciplinary problems, in each instance identifying the students involved by name. The defendants included the members of the committee, the committee staff, the Superintendent of Documents, and the Public Printer. The district court dismissed the action against the individual defendants on the ground that the conduct complained of was absolutely privileged. A divided panel of the District of Columbia Circuit affirmed, concluding that these defendants were immune from the liability asserted against them because of the Speech or Debate Clause and the doctrine of official immunity as recognized in *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

The Supreme Court agreed that the claims against the congressmen and the committee staff were barred under the Speech or Debate Clause. Introducing material at committee hearings, referring the report to the Speaker of the House, and voting for publication of the report were "legislative acts," and, as such, were immune from suit. The Court explained that "a public report may, without losing Speech or Debate Clause protection, be distributed to and used for legislative pur-

---

4. *E.g., Harlow*, 102 S.Ct. at 2732 (senior Presidential advisors); *United States v. Burzynski Cancer Research Institute*, 819 F.2d 1301 (5th Cir.1987), *cert. denied sub nom. Wolin v. United States*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988) (Food & Drug Administration employee); *Williamson v. United States Dep't of Agriculture*, 815 F.2d 368 (5th Cir.1987) (Farmers Home Administration officials); *Palermo v. Rorex*, 806 F.2d 1266 (5th Cir.), *cert. denied*, 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987) (IRS agent); *Minton v. St. Bernard Parish School Bd.*,

803 F.2d 129, 135 (5th Cir.1986) (school board members; "[w]hen an official possessing legislative responsibilities engages in official activities," he has the *qualified* immunity "grounded in good faith that is bestowed upon other government officials"); *Williams v. Collins*, 728 F.2d 721 (5th Cir.1984) (Army Corps of Engineers investigators); *Allred v. Svarczkopf*, 573 F.2d 1146 (10th Cir.1978) (dog catcher); *Jones v. Diamond*, 519 F.2d 1090, 1100–01 (5th Cir.1975) (county board members).

poses by Members of Congress, congressional committees, and institutional or individual legislative functionaries." 93 S.Ct. at 2024. The Court declined to examine the appropriateness or usefulness of the information that was published.

The Supreme Court went on to note, however, that "everything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause." 93 S.Ct. at 2025. As the Court explained:

> " '[T]he Clause has not been extended beyond the legislative sphere,' and '[l]egislative acts are not all-encompassing.' *Gravel v. United States* [408 U.S. 606] 92 S.Ct. 2614, 2627 [33 L.Ed.2d 583] (1972). Members of Congress may frequently be in touch with and seek to influence the Executive Branch of Government, but this conduct 'though generally done, is not protected legislative activity.' *Id.; United States v. Johnson* [383 U.S. 169] 86 S.Ct. 749 [15 L.Ed.2d 681] (1966). Nor does the Speech or Debate Clause protect a private republication of documents introduced and made public at a committee hearing, although the hearing was unquestionably part of the legislative process. *Gravel v. United States, supra.*" 93 S.Ct. at 2025 (citation form modified).

With respect to the claims of the Public Printer and the Superintendent of Documents for immunity under the Speech or Debate Clause, the Supreme Court framed the question as follows: "[W]hether the Speech or Debate Clause affords absolute immunity from private suit to persons who, with authorization from Congress, distribute materials which allegedly infringe upon the rights of individuals." 93 S.Ct. at 2025. The Court answered the question in the negative:

> "A Member of Congress may not with impunity publish a libel from the speaker's stand in his home district, and clearly the Speech or Debate Clause would not protect such an act even though the libel was read from an official committee report. The reason is that republishing a libel under such circumstances is not an essential part of the legislative process and is not part of that deliberative process 'by which members participate in committee and House proceedings.' By the same token, others, such as the Superintendent of Documents or the Public Printer or legislative personnel, who participate in distribution of actionable material beyond the reasonable bounds of the legislative task, enjoy no Speech or Debate Clause immunity." *Id.* at 2025–26 (citation and footnote omitted).

The Court continued: "Thus, we cannot accept the proposition that in order to perform its legislative function Congress not only must at times consider and use actionable material but also must be free to disseminate it to the public at large, no matter how injurious to private reputation that material might be." *Id.* at 2026.

The Supreme Court reached precisely the same conclusion with respect to the official immunity doctrine. The Court explained its resolution as follows:

> "We conclude that, for the purposes of the judicially fashioned doctrine of immunity, the Public Printer and the Superintendent of Documents are no more free from suit in the case before us than would be a legislative aide who made copies of the materials at issue and distributed them to the public at the direction of his superiors. *The scope of the inquiry becomes equivalent to the inquiry in the context of the Speech or Debate Clause, and the answer is the same.* The business of Congress is to legislate; Congressmen and aides are absolutely immune when they are legislating. But when they act outside the 'sphere of legitimate legislative activity,' they enjoy no special immunity *from local laws* protecting the good name or the reputation of the ordinary citizen." *Id.* at 2030 (emphasis added and citations omitted).

Although the Court's opinion in *McMillan* appears to us to foreclose Congressman Brooks' official immunity argument, we will proceed to discuss some of the

other arguments and authorities raised by the parties.[5]

Congressman Brooks points out that on remand in *McMillan,* the D.C. Circuit held that the Public Printer and the Superintendent of Documents were entitled to "a qualified immunity for their official acts, even though they may exceed the protection of the absolute Speech or Debate Clause immunity." *Doe v. McMillan,* 566 F.2d 713, 719 (D.C.Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978). The D.C. Circuit allowed qualified immunity because those defendants had acted in good faith and "pursuant to statutory direction or congressional orders that they could have reasonably believed were valid." *Id.* This is not true in the case *sub judice,* and in any event, Congressman Brooks has not sought to invoke qualified immunity, and we have no occasion to, and do not, make any determination as to whether or not it is available.[6]

Moreover, the result in *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), appears inconsistent with finding absolute immunity for Congressman Brooks here. *Proxmire* was a state law defamation suit, and the Supreme Court in substance concluded that federal law did not provide absolute immunity to Senator Proxmire. While the *Proxmire* Court explicitly addressed only the Speech or Debate Clause,[7] and not *Barr v. Matteo* official immunity, it seems most unlikely that it would have reversed the judgments below in favor of Senator Proxmire had official immunity been available. Certainly the facts in *Proxmire* were as favorable to a claim of official immunity as are those here. The failure to discuss that theory in *Proxmire* is likely explainable by the fact that the Court there explicitly held the complained of publications beyond the scope of the protection of the Speech or Debate Clause, and had already held in *McMillan* that in the defamations context official immunity of members of Congress was no broader than that afforded by the Speech or Debate Clause.

Congressman Brooks further contends that this Circuit has recognized that official immunity also covers congressmen. He cites the following language from *Davis v. Passman,* 544 F.2d 865 (5th Cir.1977), *reh'g en banc granted and opinion vacated,* 553 F.2d 506 (1977), *rev'd on other grounds,* 571 F.2d 793 (1978) (en banc), *rev'd,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), an action against United States Congressman Passman, alleging that he violated the Fifth Amendment by discharging a female staff member because of her sex: "The inapplicability of Speech or Debate protection does not foreclose [a] Representative [ ] from asserting the same qualified immunity available to other government officials." *Id.* at 881 (citations and footnote omitted). However, the original panel opinion in *Passman* went on to state:

> "*The inapplicability of speech or debate protection does, however, foreclose Representative Passman from asserting an absolute official immunity....* Speech or Debate protection is coextensive with *the need* to afford members of Congress absolute immunity. Absolute immunity extends only to certain key government

**5.** We recognize that the concurring opinion of Justice Douglas in *McMillan* appears to afford greater protection to members of the legislative branch under official immunity and the Speech or Debate Clause than does Justice White's opinion for the Court, and that it perhaps arguably reads the Court's opinion differently than we do. Nonetheless, because Justice White's opinion attracted a majority of the Court and Justice Douglas' opinion only three votes, we are bound by the majority opinion notwithstanding the fact that Justice Douglas and the two other justices who joined his opinion also joined the Court's opinion, which otherwise would not have commanded a majority of the Court.

**6.** Congressman Brooks also relies on the statement in a footnote in *McMillan* that "[b]oth before and after *Barr,* official immunity has been held applicable to officials of the Legislative Branch." *Id.* 93 S.Ct. at 2028 n. 13. We do not hold that official immunity is not applicable to Congressmen, but we merely hold that the scope of its protection is coextensive with that of the Speech or Debate Clause.

**7.** The Court also rejected the claim that the plaintiff was any kind of a public figure, with the result that Senator Proxmire was not entitled to the protection of the "actual malice" rule of *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

officials, and then only when they are governing. It extends to prosecutors when they are prosecuting, to judges when they are judging, and to legislators when they are legislating. As indicated, however, legislators are not legislating when they dismiss staff members. For the same reasons that the speech or debate clause does not extend to staff dismissals, Representative Passman cannot invoke absolute immunity." 544 F.2d at 881 (citations omitted) (emphasis added).

In any event, because the panel opinion in *Passman* was vacated on the granting of rehearing en banc and the immunity question was never addressed by the en banc court or by the Supreme Court, it is not binding.

Congressman Brooks states that the courts of other circuits have routinely applied the doctrine of official immunity to legislators. Nonetheless, only two of the cases cited specifically held that congressmen are entitled to official immunity from suits for common law torts. *See Adams v. American Bar Ass'n*, 400 F.Supp. 219, 226 (E.D.Pa.1975) (cabinet officers, congressmen, and other federal officials entitled to *Barr* official immunity); *Dunlap v. Wahlstrom*, Civ. Action No. 82–184 (E.D.Ky. July 6, 1983), *aff'd*, 738 F.2d 438 (6th Cir.1984) (unpublished) (congressman and caseworker entitled to official immunity). The other cited cases involve either local officials, qualified immunity, or Speech or Debate Clause immunity.[8]

A case directly on point and discussed extensively by the parties is *Chastain v. Sundquist*, 833 F.2d 311 (D.C.Cir.1987), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 946 (1988). In that case, the panel majority concluded that "members of Congress ... cannot claim immunity from defamatory statements unprotected by the Speech or Debate Clause." 833 F.2d at 316. The majority and dissenting opinions in *Sundquist* contain a very thorough dis-

cussion of the policy considerations, as well as the law, on this issue.

Congressman Brooks would distinguish *Sundquist* on the ground that it dealt with a legislator who spoke to the press about a dispute between a local legal aid society and a local juvenile court, which was not the subject of federal legislation, in contrast to his statements about Williams' claim for a commission, which pertained to an issue arising from recently enacted appropriations, and about which the House was developing further legislation. Congressman Brooks also contends that *Sundquist* was incorrectly decided because: (1) the panel majority misread the Supreme Court cases, relying on irrelevant Speech or Debate Clause discussions; and (2) *Sundquist* does not explain why the *Barr* rationale—that if officials do not receive official immunity, they would hesitate to give public statements in their official capacities—would be any less true for legislative than for executive officials. Congressman Brooks also points out that, on May 12, 1988, the House of Representatives, by a vote of 413–0, adopted a resolution condemning the *Sundquist* decision "because of its impact on the necessary and proper functioning of the House of Representatives as a coordinate branch of government and as the elected representatives of the American people." H.R.Res. 446, 100th Cong., 2d Sess. Finally, he contends that *Sundquist*'s conclusion that congressmen are limited to Speech or Debate immunity under the Constitution

> "produces the self-contradicting result that the officials whom the Constitution most explicitly protects—Members of Congress—receive the least immunity precisely because of that explicit protection, while other Branches—given no textual protection from lawsuit—receive the most immunity."

At least some of these arguments, particularly the latter and that concerning the *Barr* rationale, are not without considera-

---

**8.** One of the cases cited by Congressman Brooks indicates that official immunity affords no greater protection to legislators than the Speech or Debate Clause. *Benford v. American Broadcasting Cos., Inc.*, 502 F.Supp. 1148, 1158 (D.Md. 1980) ("Absolute official immunity, when applied to the legislative branch, is at most coextensive with the absolute protection afforded by the Speech or Debate Clause").

ble force. Nonetheless, we ultimately conclude that *Sundquist* properly resolved the immunity question in that case and is not distinguishable from the case before us. To hold that any statements conceivably within the "informing function" of members of Congress are absolutely immune from suit for defamation would almost wholly exempt senators and representatives from state defamation laws, and arguably in that respect expand the Speech or Debate Clause. We are in any event powerless under *McMillan* to expand official absolute immunity as Congressman Brooks requests. We also observe that members of the legislative branch, unlike members of the other coordinate branches of the federal government, have the unique power to pass a law giving themselves immunity from suit. Accordingly, it may be appropriate that any grant to them of more expansive absolute immunity than that already written into the Constitution come about by legislation rather than by judicial decision.[9]

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

REAVLEY, Circuit Judge, concurring.

I am compelled by the controlling authority to concur in this opinion; but I would hold, if free to do so, that official immunity from common law defamation liability extends to members of Congress when in an official capacity they comment on current legislative issues. *See* Mikva, Circuit Judge, dissenting in *Chastain v. Sundquist*, 833 F.2d 311, 328 (D.C.Cir.1987); *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 946 (1988).

---

**9.** The FELRA may be such a statute (see note 3 *supra*). Whether, or in what circumstances, such a grant of immunity could constitutionally override state defamation law is perhaps another question. But if there would be any constitutional problem with such legislation, then we must also assume that judge-made federal law would be subject to essentially the same limitations.